RUSSELL v. WINCHESTER REPEATING ARMS CO.

(Circuit Court, D. Connecticut. November 2, 1906.)

No. 979.

1. PATENTS—INFRINGEMENT—COMBINATIONS.

A combination patent is not infringed by a device which is not only structurally different, but does not perform by reason of its combination various functions which are inherent necessities of the patented combination and have been specifically pointed out in the specification.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, §§ 382–389.]

2. SAME—MAGAZINE GUN.

The Russell patent No. 501,367, for a magazine gun, claims 4, 8, and 29, construed, and, as limited by the prior art, their language, and the proceedings in the patent office, held not infringed.

In Equity. On final hearing.

Watrous & Day and James H. Hayden, for complainant.
George D. Seymour, for defendant.
Francis H. Parker, U. S. Dist. Atty.

PLATT, District Judge. This is a bill in equity alleging infringement of United States letters patent No. 501,367, dated July 11, 1893, for improvements in magazine guns. Only three claims are now in issue, and the usual demand for an injunction and accounting follows. Complainant's invention has never been embodied in a practical working form. That fact is not decisive against him, but it compels the court to carefully scrutinize his specifications and claims, and to so restrict his monopoly that it shall not be extended an iota beyond what he has accurately and clearly disclosed. He made his own bed, and he must occupy it gracefully. The exhibits have had a checkered career, but it is hoped that those remaining will enable the trier to deal justly between the parties.

To find the disclosure and what is thereby covered by the grant, we go naturally to the arena in which the contract was, step by step, brought into form, beginning with the application and studying its career until finally reduced to concreteness in the granted patent. The claims finally left at issue, after a struggle which began with 4 patents and 91 claims, are 4, 8, and 29 of letters patent No. 501,367:

"(4) In a fire arm the bolt, the firing pin having a projection, the brace pivotally connected to the bolt, the handle connected to the brace and having a recess therein, in combination with the receiver, whereby when the handle is swung toward the bolt the projection on the pin engages said handle and holds the handle into proximity with the bolt, all substantially as described."

"(8) In a magazine gun, the magazine having a passage through which a cartridge package case may pass without obstruction, and a detent in the line of movement of cartridges in said case, in combination with an open-ended cartridge package case constructed to pass directly through the magazine leaving the cartridges therein, substantially as described."

"(29) In a magazine gun, the magazine having a passage through which a cartridge package case may pass without obstruction, and a detent in the line of movement of cartridges in said case, in combination with a cartridge package case constructed to pass through the magazine, and having a yielding catch for the cartridges, whereby the cartridges remain in the magazine when the package case is passed therethrough, substantially as described."

These are the siftings from an earlier voluntary reduction to 11 claims out of the 37, which attempt to cover the disclosures of this patent. They represent the possibilities which have persisted in the minds of the inventor and his expert assistants. On general principles one must be inclined to doubt the probability that infringement will be found, and this is especially true when it appears that the alleged infringing mechanism is constructed in exact accordance with the disclosures found in the patents to J. P. Lee, Nos. 547,583, 522,-603, 506,322, and 506,319. To overcome the presumption arising from these grants a very clear case ought to be presented by the complainant.

Let us see what kind of case has been made out. For convenience we will first look at claim 4, which is the only breach mechanism claim at issue. It is conceded by the complainant that all the elements of this combination claim are old, and that, if they are to be construed literally, there is no infringement. To be a trifle more specific, it is conceded that it was old in rotary bolt guns to use the firing-pin spring to hold the handle rigid in its bolt operating positions, and in straight pull guns to hold a pivotal bolt handle rigid with respect to the bolt by a spring. The only semblance of novelty would be the using of the firing-pin spring in a straight pull gun to produce the rigidity. The claim is silent in that respect, and the patentee does not talk about it in the specifications. He knew how the Patent Office would have been likely to meet a suggestion of such novelty, and he naturally told us about other things which the combination would do and which he thought to be patentable.

The defendant insists that, if all the elements of the claim are old, there is no room for patentability, unless we find a new and useful result proceeding from the coaction of all the elements. The results are, the defendant contends: (1) Taking care of the brace by using the handle as a lever to raise and lower it, so that it may not jam or wedge when the bolt is moved back and forth. (2) Engagement of the handle directly with the bolt, so as to take its forward thrust off the brace and thereby relieve the strain on the pivot of the brace. Also that the brace of claim 4 must have a recoil-taking function, and that it must really be a brace, with the necessary and characteristic functions of a brace.

I cannot find in the specifications or claims any suggestion that holding the handle in rigid connection with the bolt was novel and represented the essence of the invention. On the contrary, it appears very clearly that the handle shall be held "into proximity with the

bolt," and those words of their own vigor preclude the idea of rigidity. The law is settled that the combination of an alleged infringing device is not that of the patent because it will do the same work in one of the several operations which it is designed to effect in substantially the same way, and it does not infringe when it is not only structurally different, but performs the other operations in a substantially different way. Is not the complainant in worse plight when the alleged infringing device is not only structurally different, but does not perform by reason of its combination various functions which are inherent necessities of the patented combination, and have been specifically pointed out in the specifications? In short, the "brace" of the disclosure cannot be found in defendant's construction.

Let me add an extra word or two bearing upon that proposition. In the specifications (lines 70–78) the patentee says:

"The handle piece is connected to the brace by a pin, 14, in the brace entering a groove in the handle, or by other connection which permits a free longitudinal movement of the handle relatively to the recess in the brace."

Nothing but a locking brace of that description is disclosed in the specifications, and in preparing claims to meet the disclosure such a locking brace is, in one way or another, always specifically mentioned, except in claim 4. There the word locking is not found, and for that reason the complainant's experts are able to build up the ingenious theory which permits them to find infringement.

There is no suggestion in the patent of a brace which does not lock. We can hardly expect to find a pioneer claim in a patent based upon a function which is not mentioned either in specification or claim. It is certainly asking too much to demand such a construction of an isolated claim in a patent which confessedly has added nothing of practical commercial advantage to the world's knowledge. The "brace" had many functions, among which may be instantly discovered anti-friction and wedging, taking the recoil thrusts, and protecting the brace pivot. These functions are not present in that portion of defendant's actuator which the complainant insists must be called the brace, and which he separates from the handle by some vague, intangible, imaginary line, and which, thinking that he has found, he wishes to endow with a function which, if it were the only one in his patented combination, might give him the chance to argue with some plausibility that the defendant invades the territory preoccupied by claim 4.

Complainant's Exhibit Model No. 3, prepared under complainant's direction, would seem to settle the question of fact as to whether the handle and brace of the patent in suit can be made integral and still perform the suggested functions of claim 4. They are certainly not integral in the exhibit, and it is not conceivable that complainant would have overlooked such an opportunity to demonstrate the feasibility of making them so. Claim 4 is not infringed.

Claim 8, above set forth, stands at the head of the numerous claims which were framed to cover the patentee's disclosure of what he had done to improve the method of feeding cartridges to the magazine and the construction of the magazine. It omits one element found in the

combination of claim 29, and therefore, if there is no infringement here, no time need be wasted on the latter claim. Its language seems plain and well adapted to cover a combination which expresses a definite inventive thought. It apparently states a combination of mechanical elements in a magazine gun which will enable the user to load the magazine in a better way than had been known before. As we study the disclosure we become convinced that the inventor's concept was like this: One requires a magazine with a passage through which a cartridge package case holding several cartridges can easily and unobstructedly pass, leaving the cartridges in the magazine ready for service. The cartridges, of course, cannot pass, because an obstruction appears in the line of their movement, and the cartridge package case cannot go through that portion of the magazine in which the cartridges are detained. Obviously the passage referred to must be found in the unobstructed portion. The only unobstructed portion is that made free for the desired purpose by cutting away the lower left-hand corner of the magazine.

To be sure about the contract, however, it is right to study with great care what the patentee says in his application, and what he has said about his application while seeking his grant. We find him saying in the patent in suit:

"My purpose is to feed a packing case filled with cartridges into the magazine, and pass the case directly through the magazine, leaving the cartridges behind in the magazine. It is common, as in the Mannlicher gun, to put a cartridge package in a magazine, and permit the empty case to be withdrawn from the magazine after the cartridges have been fired. But this is objectionable, since the cases in which cartridges are packed should be light, so as not to load the soldier with needless weight. Being made of thin metal usually, the cases are liable to indentation, and in such case the cartridges become clogged by the packing case against the action of the magazine spring, and the gun is temporarily disabled. There are other cartridge packages which are put wholly or partly into the magazine or applied to the mouth thereof, and the cartridges are forced from the case into the magazine, when the cases are withdrawn from the loading end of the magazine. To avoid this reversal of movement I have arranged to pass the packing cases right through the magazine, although in the magazine of the present invention the former course may still be pursued in filling the magazine."

What the patentee, who knew the art, had in mind, was to get rid of the clip before firing the gun, and so provide for a cheap clip that could be thrown away, and which could not endanger the gun by remaining in it during the whole or a part of its actual firing use. He seems to have admitted in cross-examination that his change of construction from the Mannlicher gun consisted in making the magazine open at the bottom, and also at the sides, so that the clip could be taken out forcibly, and this use was emphasized by roughening the end of the clip, so that a better grip could be taken upon it by the hand. The patentee intended to get rid of the clip in advance and to avoid the "reversal of movement" then in vogue by forcibly passing the clip right through the magazine.

It will be understood that, in practicing the reversal of movement method, the cartridge clip was stuck into the magazine from above by hand, the cartridges stripped out as peas are stripped from a pod, and the clip then pulled up and out at the top. To improve upon this

way of doing, he cut away the lower corner and formed a passage in the side wall of the magazine to let the clip through, and a vertical slot in the side wall, so that the hand could easily get at the lower end and pull it away, leaving the cartridges behind. The patentee wanted a method claim when he began the hunt for the grant which the patent in suit covers. He called that one 8, and it was as follows:

"The method of loading a magazine, which consists in passing an open ended cartridge packing case into the magazine, retaining the cartridges in the magazine, and withdrawing the packing case by a continuation of the movement of inserting the same, thus passing the case through the magazine."

The examiner required a division, and the patentee resisted. In his petition to the commissioner we find, inter alia, these things:

"Applicant claims a peculiar magazine gun. and a mode of manipulating it. The gun is made with a passage through it, and the cartridges are fed into the gun in a clip or packing case, when, by carrying the hand to the reverse side of the gun. the clip is drawn through, leaving the cartridges in the gun.

"The eighth claim in the application is as follows:

"'The method of loading a magazine, which consists in passing an open ended cartridge packing case into the magazine, retaining the cartridges in the magazine. and withdrawing the packing case by a continuation of the movement of inserting the same, thus passing the case through the magazine.'

"Other claims in the case are based on the structure by which it is made possible to pass the clip or feed case directly through, leaving the cartridges behind, as, for instance, claims 9, 13. and 14. which claims relate to the structure of the gun frame; and claims 17 and 18 relate to the combination of the feed case with the gun."

It appears, therefore, that at the very outset his inventive thought was limited to a method of forcibly passing a cartridge case through a fixed magazine by a substantially continuous movement of the hand, so as to get rid of it and leave the cartridge behind. If that was his method, it must follow that the means which he conceived must have been adapted to exploit his method, and nothing else. On page 30 he says:

"In box magazine guns there are several methods of loading. One method is to apply a full box or magazine at the bottom of the gun, and feed from this box into the gun, removing the box or case by hand after it is exhausted. Another plan is to apply the full clip or packing case at the top of the gun, where, as in the pending case, it is held up by the follower until all the cartridges are exhausted, when it drops out by gravity. The present invention is an improvement on this latter plan. The desirability of the improvement arises from the fact that the clip or casing does not always drop out when empty, and the cartridges may become clogged in the clip, thus disabling the gun."

"The construction of the gun and feed case are but slightly changed from the old form last mentioned, but the advantage gained is considerable, since the clip or case can be passed right through the frame with almost a continuous movement, and is then thrown away."

And so it appears that the patentee had in his mind a clear distinction between a gun in which the clip is forcibly removed at the time of charging and one in which it is permitted to remain in the magazine and drop out by gravity.

One more glimpse at the patentee's mind may be had on page 48, when, in reply to an objection to certain claims because there was no mechanical connection between the feed case and the clip, he says:

"As to the lack of combination between the feed case and the clip, for what purpose was the magazine cut away, but to permit the entry of the fingers to enter and grasp the clip? For what purpose was the clip roughened and strengthened, except to permit this grasp, while the clip is in the position in the magazine at which the fingers find it when entering the recesses? The structures have a peculiar form, for a single purpose, namely, the convenient withdrawal of the clip."

The appeal resulted in his losing his method claim. The board in their decision used this language:

"It appears that the applicant has merely made a magazine gun which is loaded by putting the cartridge package into one end of the magazine and pulling it out."

Thereupon the patentee canceled the disputed method claim 8, and offered in lieu thereof the claim 8 now at issue. In support of it he refers to the guns of the prior art which the examiner had cited. and says, on page 61: "Not one of these permits the package to pass through the magazine and leave the cartridge behind." This was the last expression of his inventive thought prior to the grant. It helped to push claim 8 past the doubts of the examiner. He must not repudiate it now. Any expansion of claim 8 beyond what it then meant to the patentee would amount to a reissue of the patent by the court with "passage" and "directly," and the mandatory clause about passing the clip "through the magazine leaving the cartridge therein," eliminated. It is not for us to inquire whether he was forced by the art to so limit his claim. The fact remains that he did so limit it, and the rights of the public demand that he shall keep to his bargain.

This matter has been more thoughtfully considered than might perhaps appear from the rather broad way in which this opinion treats it. There is no end to the good reasons which might be written out in support of the final conclusion which has been reached. One look at defendant's clip shows that, under the construction of claim 8 which seems to be forced upon it, there can be no shadow of reason for claiming infringement, and so it would be wasteful to analyze its construction. Claim 8 is not infringed. It would be worse than wasteful to multiply words respecting claim 29. I am satisfied that there is no infringement there.

Let the bill be dismissed, with costs.